# Exhibit "D"

**FINRA DISPUTE RESOLUTION**

-------------------------------------------------- )
ODEON CAPITAL GROUP LLC,                            )
                                                   )
                    Claimant,                       )
                                                   )
         -against-                                  )      Case No.: 16-00033
                                                   )
MIHIR J. PATEL and AURIGA USA, LLC,                )
                                                   )
                    Respondents.                    )
-------------------------------------------------- )
MIHIR PATEL,                                        )
                                                   )
                    Counterclaimant,                )
                    and Third-Party                 )
                    Claimant,                        )
                                                   )
         -against-                                  )
                                                   )
ODEON CAPITAL GROUP LLC                             )
                                                   )
                    Counterclaim                    )
                    Respondent,                     )
                                                   )
         and                                        )
                                                   )
MATHEW VAN ALSTYNE and EVAN                         )
SCHWARTZBERG,                                       )
                                                   )
                    Third-Party Claim               )
                    Respondents.                     )
-------------------------------------------------- )

## RESPONDENT AURIGA USA, LLC'S
## MOTION TO COMPEL PRODUCTION AND
## MOTION TO IMPOSE DISCOVERY SANCTIONS

Pursuant to Rules 13509, 13212, and 13511 of the FINRA Code of Arbitration Procedure,

respondent Auriga USA, LLC ("Auriga"), by its attorneys Finn Dixon & Herling LLP, hereby

moves the Panel to (1) compel claimant Odeon Capital Group LLC ("Odeon") to produce

documents and information responsive to Auriga's July 1, 2016 First Request for Production of

Documents and Information ("Request"), and (2) impose discovery sanctions against Odeon for its failure to respond to Auriga's Request.

## Introduction

Over nine months ago, Odeon filed its Statement of Claim against Auriga (Exhibit A, without exhibits), alleging that Auriga (1) tortiously interfered with Odeon's contract with respondent Mihir J. Patel, and (2) misappropriated and exploited Odeon's proprietary information in order to interfere with Odeon's relationships with its clients and potential clients. As noted in Auriga's Answer (Exhibit B), Odeon alleged no facts supporting its conclusory (and sensational) allegations, and Odeon's claim was otherwise devoid of factual and legal merit.

On July 1, 2016, Auriga served its Request on Odeon (Exhibit C). Auriga's document and information requests focus on the evidentiary basis for Odeon's allegations (*see, e.g.,* Request No. 7: "All documents evidencing Odeon's contention that Respondents have misappropriated or exploited proprietary information belonging to Odeon as referenced in paragraph 84 of the Claim") and the identities of witnesses who could support Odeon's allegations (*see, e.g.,* Request No. 14: "Identify all persons, including their employer, title, last known address, telephone number, and email address, with knowledge or information that Mr. Patel 'directly and indirectly was responsible for soliciting away Odeon employees to work for Auriga' as referenced in paragraph 28 of the Claim").

Per FINRA Rule 13506, Odeon was required to respond to the Request within sixty (60) days of receipt, *i.e.,* August 29, 2016. However, Odeon failed to respond, in any manner, to the Request by August 30, 2016. On September 2, 2016, Auriga's counsel emailed a letter to Odeon's counsel (Exhibit D), stating:

> . . . . To date, we have received no response to the Request, or any communication from you or Odeon regarding the Request.

As you know, Rule 13507(b) admonishes that "[a] party must act in good faith when complying with paragraph (a) of this rule." Based on the above, Odeon does not appear to be acting in good faith in connection with the Request.

If Odeon does not provide an appropriate response to the Request by 5:00 pm on Tuesday September 6, 2016, Auriga will have no choice but to move the Panel to compel discovery from Odeon pursuant to Rule 13509 and to impose sanctions against Odeon pursuant to Rule 13212.

As of today, September 8, 2016, sixty-nine days after the Request, and six days after the letter referenced above reminding Odeon of its discovery obligations, Odeon has still not responded in any manner to the Request or the letter. Odeon's complete failure to participate in discovery is inexcusable.

### Discussion

FINRA Rule 13505, "Cooperation of Parties in Discovery," states that "[t]he parties must cooperate to the fullest extent practicable in the exchange of documents and information to expedite the arbitration."

FINRA Rule 13507, "Responding to Discovery Requests," states as follows:

(a) Unless the parties agree otherwise, within 60 days from the date a discovery request is received, the party receiving the request must either:
  • Produce the requested documents or information to all other parties;
  • Identify and explain the reason that specific requested documents or information cannot be produced within the required time, and state when the documents will be produced; or
  • Object as provided in Rule 13508.

(b) A party must act in good faith when complying with paragraph (a) of this rule. "Good faith" means that a party must use its best efforts to produce all documents required or agreed to be produced. If a document cannot be produced in the required time, a party must establish a reasonable timeframe to produce the document.

Odeon failed, within 60 days of the Request, to (1) produce the requested documents and information to Auriga, (2) identify and explain the reason why it could not produce the requested documents and information within the required time, (3) state when documents and information

will be produced, or (3) object to the Request.  This complete failure to attempt to comply with the rule, even after a timely reminder from opposing counsel and opportunity to cure, evidences Odeon's lack of "good faith."

The Panel should issue an order compelling Odeon to immediately produce the documents and information sought in Auriga's Request.

Further, the Panel should issue sanctions against Odeon for its outrageous and dilatory conduct.  Rule 13511, "Discovery Sanctions," states:

> (a) Failure to cooperate in the exchange of documents and information as required under the Code may result in sanctions. The panel may issue sanctions against any party in accordance with Rule 13212(a) for:
> • Failing to comply with the discovery provisions of the Code, unless the panel determines that there is substantial justification for the failure to comply . . .

Rule 13212, "Sanctions," referenced in Rule 13511, states:

> (a) The panel may sanction a party for failure to comply with any provision in the Code, or any order of the panel or single arbitrator authorized to act on behalf of the panel. Unless prohibited by applicable law, sanctions may include, but are not limited to:
> • Assessing monetary penalties payable to one or more parties;
> • Precluding a party from presenting evidence;
> • Making an adverse inference against a party;
> • Assessing postponement and/or forum fees; and
> • Assessing attorneys' fees, costs and expenses.
> . . .

Because Odeon failed to object to the Request within the required time frame (and failed to seek an extension of its deadline, and also failed to respond to counsel's September 2, 2016 letter reminding Odeon of its obligation), the Panel should rule that Odeon has waived its right to object to any specific document and information requests.  A quick review of the Request will show that each document and information request is reasonably calculated to lead to the discovery of relevant evidence here.

And in light of Odeon's bad faith conduct, the Panel should order Odeon to reimburse Auriga for its reasonable attorneys' fees and expenses incurred in connection with the filing of this Motion.

## Conclusion

For the reasons stated above, Auriga respectfully requests that the Panel compel Odeon to immediately produce all documents and information sought by the Request, and impose the requested sanctions against Odeon.

Dated:      Stamford, Connecticut
            September 8, 2016


                                      FINN DIXON & HERLING LLP

                                      By: _____
                                          Jeffrey Plotkin
                                          Lauren Schreur

                                      177 Broad Street
                                      Stamford, Connecticut 06901
                                      (Tel.) (203) 325-5018
                                      (Tel.) (203) 325-5055
                                      (Fax) (203) 325-5001
                                      Attorneys for Respondent
                                      AURIGA USA, LLC

## CERTIFICATE OF SERVICE

A copy of the foregoing Respondent Auriga USA, LLC's Motion to Compel Production and Motion to Impose Discovery Sanctions, was served via Federal Express and electronic mail on September 8, 2016 upon:

Jonathan Sack, Esq.
Sack & Sack, LLP
70 East 55th Street, 10th Floor
New York, NY 10022
***Attorneys for Claimant***
***Odeon Capital Group LLC***
***and Third-Party Respondents***
***Mathew Van Alstyne and Evan Schwartzberg***

Gary Trachten, Esq.
Kudman Trachten Aloe LLP
350 Fifth Avenue, 68th Floor
New York, New York 10118
***Attorneys for Respondent***
***Mihir J. Patel***

_____
Jeffrey Plotkin
FINN DIXON & HERLING LLP
6 Landmark Square
Stamford, Connecticut 06901
(Tel.) (203) 325-5018
(Tel.) (203) 325-5055
(Fax) (203) 325-5001
Attorneys for Respondent
AURIGA USA, LLC

# EXHIBIT A

FINANCIAL INDUSTRY REGULATORY AUTHORITY
DEPARTMENT OF ARBITRATION

-------------------------------------------------------------------- x

ODEON CAPITAL GROUP LLC,

                                        Claimant,

               — against —

MIHIR J. PATEL and AURIGA USA, LLC,

                                 Respondents.

-------------------------------------------------------------------- x

BEFORE THE
**FINANCIAL INDUSTRY
REGULATORY
AUTHORITY**

Case No. _____

**STATEMENT OF CLAIM**

       Pursuant to the FINRA Code of Arbitration Procedure, this action is brought by Claimant, **ODEON CAPITAL GROUP, LLC** (CRD# 148493 / SEC# 8-68033) ("*Odeon*" or "*Claimant*"), by their attorneys, Sack & Sack, LLP, against their former employee, Respondent, **MIHIR J. PATEL** (CRD# 5000904) ("*Patel*") and his current employer, Respondent **AURIGA USA, LLC** (CRD# 121731) ("*Auriga*", together with Patel, "*Respondents*").

       Claimant, as and for its Statement of Claim, alleges as follows:

<u>**NATURE OF ACTION**</u>

    1.     This is an action for breach of contract against a former employee, Patel, in respect of certain restrictive covenants he agreed to honor during and subsequent to his employment with Odeon, as well as his current employer, who was aware of the restrictive covenants and tortiously interfered with Patel's contractual obligations to Odeon.

    2.     Specifically, Odeon and Patel entered into an agreement on or around March 2, 2015 that governed the terms, conditions and privileges of Patel's employment with Odeon (the "*Agreement*").

    3.     The Agreement also governed certain post-employment obligations Patel promised

to abide by in exchange for separate, and generous, consideration.

4.    Following the conclusion of Patel's employment, in accordance with the terms of the Agreement, Odeon paid to Patel the agreed-upon contractual consideration in exchange for Patel's adherence to the post-employment restrictions, which consideration Patel willingly accepted and enjoyed.

5.    Despite being paid an agreed-upon consideration for his adherence to the post-employment restrictions, Patel, in defiance of specific terms of the parties' written agreement, willfully breached the Agreement by becoming employed with a competitor of Odeon in direct violation of his post-employment obligations.

6.    As a consequence of Patel's breach, Odeon is entitled to those liquidated damages that are specifically set forth in the Agreement that the parties previously agreed would be the damages owed to Odeon in the event of a breach such as the one committed by Patel.

7.    This action is also brought against Patel's current employer, Auriga USA LLC, seeking injunctive relief and damages for tortuously and willfully inducing Patel to breach his contractual duties to Odeon, thereby engaging in unfair competition.

**PATEL ENTERS INTO THE AGREEMENT WITH ODEON**

8.    On or about March 2, 2015, Odeon and Patel entered into a written employment agreement detailing the terms, conditions, and privileges of Patel's employment.  (Exhibit A, previously defined as the "*Agreement*")

9.    According to the Agreement, Patel agreed to serve as a Trader in the Middle Markets Trading sector.

10.    The Agreement provided that Patel would be compensated in the form of base compensation in the amount of $48,000 per year, a draw of $480,000 per year, and a

performance-based bonus.

11.     The Agreement also provided for certain restrictive covenants, which Patel agreed

to abide by.

12.     Specifically, the Agreement provided:

> Your engagement shall be subject to certain non-compete and non-solicitation restrictions relating to clients and staff as detailed in Paragraph 6 of the Terms and Conditions, which may continue following the termination of your engagement Agreement.

13.     In order to ensure Patel's compliance with the Agreement's post-employment

restrictions, Odeon agreed to pay Patel 200% of his monthly salary in consideration for the

following post-employment restrictions:

14.     Specifically, in § 6.2 of the Agreement, Patel agreed that:

> During (i) the Contract Term, *and for two (2) months thereafter*, in exchange for 200% of your monthly Salary for the two additional months, you shall refrain … directly or indirectly accepting engagement or rendering services within a seventy five (75) mile radius of New York City, New York to any person, firm, corporation, association, or any other entity in competition with Odeon or any affiliate or subsidiary thereof, or directly or indirectly entering into or in any manner taking part or lending your name, counsel or assistance to any venture, enterprise, business or endeavor within a seventy five mile radius of New York City, New York, either as proprietor, principal, investor, lender, partner, member, trustee, director, officer, employee, consultant, advisor, agent, independent contractor, or in any other capacity whatsoever for any purpose which would be competitive with any business in which you engage during the period of your engagement with Odeon or any affiliate or subsidiary thereof; or … directly or indirectly accepting business from, doing business with, inducing or soliciting any customers of Odeon to whom you provided services while employed by Odeon to do business with you or any other person or entity except on behalf of Odeon.

15.     The importance to Odeon of Patel's adherence to the restrictive

covenants was specifically spelled out in § 6.1 of the Agreement as follows:

> Odeon shall disclose to you, or place you in a position to have access to or
> to develop, certain trade secrets, confidential information, or business

3

opportunities of Odeon or its affiliates or Odeon shall place you in a position to develop business good will on behalf of Odeon or its affiliates, as reasonably necessary to the conduct of your responsibilities under this agreement. As part of the consideration for the compensation and benefits to be paid to you hereunder, to protect the trade secrets and confidential information of Odeon or its affiliates that will be disclosed or entrusted to you, or to protect the business good will of Odeon or its affiliates that protect the business opportunities that will be disclosed or entrusted to you by Odeon or its affiliated companies, and as an additional incentive for Odeon to enter into this Agreement, Odeon and you agree to the non-competition provisions of this Paragraph 6. Both parties recognize that the services to be rendered by you under this Agreement are special, unique and of extraordinary character, and that Odeon is relying upon receipt of such services for the full Contract Term. You acknowledge Odeon's vital interest in retaining its employees and that the level of your compensation, including salary and bonus, if any, has been calculated to include amounts sufficient to constitute adequate consideration for your obligations and commitments under this Paragraph 6 and Paragraphs 7 and 8 below, that you have carefully read this Paragraph 6 and Paragraphs 7 and 8 below, that you understand the provisions contained therein, and that the specific enforcement of the provisions contained therein will not diminish your ability to earn a livelihood or create or impose upon you any undue hardship. You acknowledge that any breach by you thereof may cause irreparable damage to Odeon.

16.    The Agreement further provided that in the event of a breach of the restrictive covenants, Odeon would be permitted to bring an action to obtain damages for and to enjoin the violation by Patel of any such breach, and to recover attorneys' fees in respect therefor.

17.    Specifically, § 6.5 of the Agreement states, in part:

Odeon shall be entitled, if it so elects, to institute and prosecute proceedings in any court referred to in Paragraph 11, in accordance with the provisions of Paragraph 12 below, or in arbitration, as permitted herein, to obtain damages for and to enjoin the violation by you of any provision hereof, to enforce the specific performance by you of any provision hereof, and to obtain reimbursement of its attorneys' fees for any breach of this Agreement.

18.    The parties further agreed to be bound by a predetermined liquidated damages clause set forth in § 6.5 in the event Patel breached the restrictive covenants set forth in the Agreement.

4

19. The parties agreed that the terms set forth in the Agreement (in § 14.1) "shall supersede any and all prior, oral and/or written, engagement agreement(s) and constitutes the entire Agreement between the parties with respect to your continued engagement with Odeon, and there are no representations, warranties or agreements, whether express or implied, except as set forth herein…"

20. No other written agreements were entered into between Claimant and Respondent concerning the terms, conditions and privileges of his employment at Odeon.

## PATEL RESIGNS FROM HIS EMPLOYMENT AT ODEON AND JOINS A COMPETITOR IN BREACH OF THE AGREEMENT

21. On or about November 5, 2015, Patel suddenly resigned from his employment at Odeon without any prior notice.

22. In accordance with the Agreement, Patel was paid through the date of his resignation.

23. Subsequent to Patel's resignation, in accordance with the Agreement, Odeon paid to Patel the agreed-upon consideration in exchange for Patel's compliance with the post-employment restrictive covenants.

24. Specifically, since Patel's resignation, Odeon has continued to pay to Patel, and Patel accepted payment from Odeon, $8,000 per month equaling 200% of Patel's base salary in exchange for Patel's compliance of the post-employment restrictions as specified in the Agreement.

25. On November 5, 2015, the very same day Patel resigned his employment from Odeon despite Odeon's payment of the consideration, and Patel's acceptance of the consideration, Patel unrepentantly commenced employment and has continued to work at Auriga

5

USA, LLC ("*Auriga*") in direct breach of the Agreement.

26.     Auriga describes itself as follows:

> Auriga USA LLC is an institutional broker / dealer with core focus on
> trading in Residential Mortgage Backed Securities
> Auriga USA, LLC operates full-service institutional fixed income trading
> desks with state-of-the-art communications technology and trading
> systems. Through our U.S. corporate parent, Auriga Holdings, LLC, we
> offer a variety of services including whole loan trading and asset
> management. Through our Spanish affiliate company, Auriga Global
> Investors Sociedad de Valores, S.A., we offer the ability to trade European
> equity and fixed income products. We connect electronically to buy-side
> firms; route orders to multiple points of execution and subsequently route
> to our clearing firm, Pershing, for settlement.

27.     Accordingly, Auriga USA LLC is a "competitor" of Odeon (as that term is
defined in § 6.2 of the Agreement) and Patel is working in the same capacity at Auriga USA
LLC as he did at Odeon in breach of the Agreement's restrictive covenants.

28.     In further breach of the restrictive covenants set forth in the Agreement,
specifically § 6.4, Patel directly and indirectly was responsible for soliciting away Odeon
employees to work for Auriga. Consequently, Patel intentionally interfered with the continuing
contractual obligations he has with Odeon by soliciting Seth Dorman, Michael Kelley, Colin Abt
and Jonathon Denning to join him at Auriga.

29.     Jon Denning, an employee that joined Odeon as an intern and commenced full
time employment following his graduation from college, resigned from his position at Odeon as
a lucrative trader from Odeon October 30, 2015 and commenced employment with Auriga the
same day as Patel.

30.     Auriga knowingly participated in causing both Patel and other former Odeon
employees to break their respective contractual obligations to Odeon.

31.     Accordingly, Patel's active and successfully poaching of Odeon's employee

creates its separate and distinct claim for liquidated damages under the contract.

32.     Specifically, § 6.4 states:

> During the Contract Term and for a period of six (6) months thereafter, you shall not, unless you first obtain Odeon's written consent, directly or indirectly, hire (or attempt to hire), or make or offer (or attempt to make or offer), or solicit, induce or recruit (or attempt to solicit, induce or recruit) any person who, at any time during the Contract Term and for a period of six (6) months thereafter, is or was an employee of Odeon or any affiliate thereof (it being understood and agreed that the foregoing restrictions include without limitation the soliciting, recruiting or hiring of an entire brokerage desk) to apply for, enter into or accept, any written or oral arrangement, agreement or understanding regarding employment or retention as a consultant with any person or entity.

33.     This breach is particularly egregious as Patel specifically negotiated this provision from 12 months in the original draft to 6 months in the executed version, thereby accepting upon himself the restrictive covenants and presumably deeming them to be reasonable.

34.     Consequently, as a result of Patel's breach, Odeon is entitled to at least **$5,653,415** in respect of the following partial calculation of liquidated damages specified in § 6.5 of the Agreement:

> [a]n amount equal to the product of (A) the average monthly compensation earned by Odeon attributable to your efforts on behalf of Odeon for the six (6) month period immediately preceding the termination of your engagement with Odeon, or for the period of your engagement with Odeon if less than six (6) months,[1] and (B) the number of months remaining unfulfilled under this Agreement and the term of any prohibition contained in Paragraph 6.2 that was violated by you (assuming the maximum possible number of months unless Odeon has elected a shorter period under Paragraph 6.2).[2]

35.     Furthermore, Odeon may be entitled to "to receive the amount of revenues earned by [Patel] and by [his] new Company as a direct or indirect result of [his] efforts, for the same time period as described above, but only to the extent such sums exceed the

---

[1] For the last six (6) months of being assigned a sector (i.e. Energy) - from March 20, 2015 to August 20, 2015 - Patel averaged $188,447.17 per month of revenues.

[2] This equation equals 30 months.

amount described above."

36.     Furthermore, following his employment with Odeon, Patel was obligated to return all Odeon property in his possession, custody and control.

37.     To date, Patel has wrongfully and unlawfully retained possession, custody and control over Odeon property, and has refused to return the Odeon property, which includes, but is not limited to, Odeon computer equipment, despite demand to do so.

## SUMMARY OF CLAIMS

38.     As a result of Respondents' bad faith actions, Claimant is owed the following damages ("*Accrued Obligations*"), of which he was paid zero:

(i)     **$5,653,415,** which represents the liquidated damages detailed in Respondent's Terms and Conditions;

(ii)    Ordering Respondent, to pay prejudgment interest, costs, punitive damages (where applicable) and attorneys' fees, where applicable;

(iii)   Ordering Respondent to return all Odeon property in his possession, custody and control, including, but not limited to, computer equipment; and

(iv)    Ordering such other and further relief to Claimant as this Panel may deem just and proper.

## CLAIMS AND DAMAGES

Based upon the above allegations, Respondents are jointly and severally liable to Claimant for damages based upon the following legal claims:

### COUNT ONE
### (Breach of Express Written Contract)

39.     Claimant repeats, re-alleges, and incorporates by reference each and every allegation previously made herein as if the same were more fully set forth at length herein.

40.     As of the date of this Complaint, Respondent remains in breach of their express agreements to pay Claimant liquidated damages comprised of the Accrued Obligations.

41.     Despite prompt demand to do so, Claimant was not paid any portion of the Accrued Obligations as promised to Claimant by Respondent.

42.     Accordingly, based upon the express promises to Claimant, Claimant is owed and entitled to receive the full amount of the Accrued Obligations, of which it was paid zero.

### COUNT TWO
### (Breach of Fiduciary Duty)

43.     Claimant incorporates by reference and re-alleges each and every allegation as set forth above as if fully set forth herein.

44.     A fiduciary relationship exists between Claimant and Respondent.

45.     Respondent owes a fiduciary duty to Claimant.

46.     Respondent breached his fiduciary duty of loyalty, candor and independence owed to Claimant and acted to put his personal interests ahead of the interests of Claimant.

47.     By the acts, transactions and course of conduct alleged herein, Respondent knowingly, deliberately and intentionally with malice unfairly deprived Claimant of the liquidated damages.

48.     Respondent breached his fiduciary duty of loyalty to Claimant when he acting knowingly, deliberately, intentionally, resigned from his employment at Odeon to join a competitor.

49.     The aforesaid acts by Respondent have harmed Claimant.

50.     By virtue of the foregoing breaches of the fiduciary duty of loyalty, Claimant is entitled to at least the Accrued Obligations.

51.     As a result of the foregoing breaches of the fiduciary duty of loyalty, Claimant is entitled to an award of damages against the Respondent in an amount to be determined at the Hearing.

52.     The aforesaid conduct was willful and wanton, thereby entitling Claimant to an award of punitive damages against the Respondent in an amount to be determined at the Hearing.

### COUNT THREE
### (Breach of Covenant of Good Faith and Fair Dealing)

53.     Claimant repeats, re-alleges, and incorporates by reference each and every allegation previously made herein as if the same were more fully set forth at length herein.

54.     Implicit in the dealings, agreements and understandings between Claimant and Respondents is a covenant of good faith and fair dealing.

55.     The covenant of good faith and fair dealing requires that Respondent not take any action that will have the effect of destroying Claimant's rights to prevent/delay Respondent from joining a competitor.

56.     By joining a competitor in violation of the Terms and Conditions, Respondent has breached the implied covenant of good faith and fair dealing.

## COUNT FOUR
### (Action For An Accounting)

57.     Claimant repeats, realleges, and incorporates by reference each and every allegation previously made herein as if the same were more fully set forth at length herein.

58.     Respondent is wrongfully in possession of monies and property, which impose a burden upon Respondent of accounting.

59.     Claimant has no adequate remedy of law and will suffer irreparable harm unless an accounting is ordered.

60.     Based upon the foregoing, Claimant seeks and is entitled to an accounting of all monies, property, funds and assets maintained by Respondent to determine the value of Claimant's contractual fees.

61.     Upon such accounting, Claimant is entitled to a money judgment against Respondent in the amount so determined, but at least an amount equal to the Accrued Obligations.

## COUNT FIVE
### (Constructive Trust)

62.     Claimant repeats, realleges, and incorporates by reference each and every allegation previously made herein as if the same were more fully set forth at length herein.

63.     Respondent promised to pay Claimant certain compensation for the work, labor and services provided with respect to their agreement, which is usual and customary as and for the reasonable value of services rendered and to-be-rendered for the foreseeable future.

64.     Claimant performed the services required to perform services with the full expectation of receiving the compensation promised to it that is described hereunder, which what was reasonable, fair and customary.

65.     Claimant fully performed all of his obligations.

66.     Respondent failed and refused to pay to Claimant compensation, which was fair and customary.

67.     Respondent's conduct with respect to Claimant is actionable as a breach of contract based upon Quantum Meruit under quasi contract law.

68.     Respondent failed and refused to acknowledge Claimant's portion of the fees earned in accordance with their agreement and have wrongfully misappropriated Claimant's property and its rightful share of fees.

69.     Respondent would be unjustly enriched if it were allowed to retain and benefit from the full value of these items without properly compensating Claimant for this property.

70.     Respondent has no right to retain these items of value, and the principles of equity and good conscience and justice demand their return, or the return of the present value of those items, to Claimant.

71.     Claimant has no adequate remedy of law, and will suffer irreparable harm unless a constructive trust is imposed on the assets of Respondent to which Claimant has a rightful claim.

72.     Based upon the foregoing, Claimant is entitled to a declaratory judgment ordering that a constructive trust be placed over the assets of Respondent, so that they or assets of an equivalent value may be returned to Claimant.

## COUNT SIX
### (Unjust Enrichment / Disgorgement)

73.     Claimant repeats, realleges, and incorporates by reference each and every allegation previously made herein as if the same were more fully set forth at length herein.

74.     Accordingly, Counterclaim Respondent has been unjustly enriched by the economic benefit it obtained as a result of wrongfully retaining the Overpayment.

75.     Claimants also seek consequential damages it occurred as a consequence of Respondent's unlawful retention of ill-gotten monies.

## COUNT SEVEN
### (Specific Performance)

76.     Claimant repeats, realleges, and incorporates by reference each and every allegation previously made herein as if the same were more fully set forth at length herein.

77.     As a result of the foregoing breach of the agreement described herein by Respondent, Claimant has suffered and will continue to suffer irreparable harm to its business unless the Respondent is enjoined from breaching the applicable aforementioned provisions of said agreement

## COUNT EIGHT
### (Tortious Interference Of Contract – Respondent Auriga USA, LLC)

78.     Claimant incorporates by reference and realleges each and every allegation as set forth above as if fully set forth herein.

79.     On information and belief at all times material to this action, Auriga knew of the Agreement between Patel and Odeon and intentionally induced Patel to breach the Agreement for its economic benefit.

80.     By virtue of the conduct described herein, Claimant has been harmed and is entitled to the liquefied damages set forth in the Agreement.

81.     As a result of the foregoing tortious acts, Claimant is entitled to an award of damages against Respondents in an amount to be determined at trial.

82.     Respondents' actions were wanton and willful, thereby entitling Claimant to an award of punitive damages against Respondents in an amount to be determined at trial.

13

**COUNT NINE**
**(Unfair Competition – All Respondents)**

83.     Claimant incorporates by reference and realleges each and every allegation as set forth above as if fully set forth herein.

84.     Respondents have in bad-faith misappropriated and exploited proprietary information belonging to Claimant in an effort to compete unfairly against Claimant.

85.     Respondents have used that proprietary information to interfere with Claimant's relationships with clients and potential clients.

86.     These actions taken by Respondents constitute unfair competition.

87.     As a direct result of Respondents' unfair competition, Claimant has suffered damage in an amount to be determined at trial.

**COUNT TEN**
**(Conversion)**

88.     Claimant incorporates by reference and realleges each and every allegation as set forth above as if fully set forth herein.

89.     Respondent, through his wrongful actions, intentionally conveyed to himself Claimant's property to the exclusion of Claimant's rights.

90.     Respondent intentionally interfered with and/or exercised dominion and control over Claimant's property.

91.     As a direct and proximate result of Respondent's wrongful actions, Claimant has been damaged as described herein.

14

## REQUEST FOR RELIEF

**WHEREFORE,** Claimant requests that this Panel order the following relief in its favor against Respondent, *jointly and severally*:

I.      Ordering Respondents, to pay Claimant liquidated damages in an amount not less than **$5,653,415,** which is the minimum amount owed to Claimant in accordance with the Agreement;

II.     Ordering Respondent to return all Odeon property in his possession, custody and control, including, but not limited to, computer equipment;

III.    Ordering Respondents, to pay Claimant punitive damages in the maximum amount permitted by law;

IV.     Ordering Respondents, to pay all of Claimant's legal and accounting fees incurred in connection with enforcing his rights under the Agreement;

V.      Ordering Respondents, to pay prejudgment interest, costs, punitive damages (where applicable) and attorneys' fees, where applicable; and

VI.     Ordering such other and further relief to Claimant as this Panel may deem just and proper.

Dated: New York, New York
       December 30, 2015

Respectfully submitted,

**SACK & SACK, LLP**

/s/ Jonathan Sack

By: _____

Jonathan Sack, Esq.

**Attorneys for Claimant**
**ODEON CAPITAL GROUP LLC**
110 East 59th Street, 19th Floor
New York, New York 10022
Tel.: (212) 702-9000
Fax: (212) 702-9702

16

# EXHIBIT B

FINRA DISPUTE RESOLUTION

```
------------------------------------------------------- )
ODEON CAPITAL GROUP LLC,                                 )
                                                         )
              Claimant,                                  )
                                                         )
          -against-                                      )    Case No.: 16-00033
                                                         )
MIHIR J. PATEL AND AURIGA USA LLC,                       )
                                                         )
              Respondents.                               )
------------------------------------------------------- )
```

## ANSWER OF RESPONDENT AURIGA USA LLC

Respondent, Auriga USA LLC ("Auriga"), by its attorneys Finn Dixon & Herling LLP, in accordance with FINRA Rule 13303, submits this Answer to the Statement of Claim of Odeon Capital Group LLC ("Odeon") dated December 30, 2015 ("Claim"), without waiving its argument that this arbitration proceeding is a nullity because the Uniform Submission Agreement commencing this proceeding was not signed and acknowledged by Odeon (but instead was improperly signed and acknowledged by its outside counsel). Auriga denies any and all allegations not specifically referenced in this Answer and respectfully requests that all claims against it be denied in their entirety.

## BACKGROUND

Auriga, located at 110 Wall Street, 2nd Floor, New York, NY 10005, is a limited liability company organized under the laws of New York. Auriga is an institutional broker-dealer that focuses on various fixed income markets, with a core focus on mortgage backed securities and high yield corporate credit. Auriga has been a member firm of FINRA (CRD# 121731) since 2002.

Auriga currently employs Mihir J. Patel (CRD# 5000904) as a corporate bond trader. Prior to joining Auriga, Mr. Patel was a corporate bond trader at Odeon, another institutional broker-dealer.[1] Contrary to Odeon's allegations, Auriga did not tortiously interfere with Mr. Patel's contractual relationship with Odeon. Upon information and belief, on August 20, 2015, approximately a month before Mr. Patel engaged in any employment discussions with Auriga, Odeon elected not to require Mr. Patel to perform his duties under his contract and ordered him not to attend work until further notice.[2] As discussed further below, under the explicit terms of Mr. Patel's contract (drafted by Odeon), Odeon's actions constituted a termination without cause, which eliminated any applicable post-employment restrictive covenants against Mr. Patel.[3]

Additionally, upon information and belief, approximately one month after Odeon told Mr. Patel not to attend work, Odeon and its outside counsel met with Mr. Patel and told him that Odeon wished to part ways and that Mr. Patel was free to pursue and accept other employment opportunities. Only after this discussion with Odeon and its counsel did Mr. Patel first begin engaging in discussions with Auriga regarding potential employment. In short, Auriga, by hiring Mr. Patel

---

[1] Odeon's Claim characterizes Mr. Patel as a "former employee," but Odeon's March 2, 2015 Agreement with Mr. Patel (the "agreement" or the "contract"), appended as Exhibit A to the Claim, characterized Mr. Patel as an "independent contractor."

[2] Upon information and belief, Odeon also disabled Mr. Patel's access to his email and Bloomberg accounts and took away his building pass access to Odeon's premises. Upon information and belief, at the time, Odeon owed Mr. Patel several hundred thousands of dollars in earned compensation pursuant to the terms of the contract, and was apparently seeking to gain leverage over Mr. Patel with respect to negotiations over this balance due.

[3] It should be noted that Odeon claims that "On or about November 5, 2015, Patel suddenly resigned from his employment at Odeon without any prior notice," Claim ¶ 21, but admits in a footnote that Mr. Patel ceased trading for Odeon on August 20, 2015, see Claim ¶ 34 n. 1, the day Odeon ordered Mr. Patel not to come to work.

under these circumstances, engaged in no conduct that could remotely be considered a tortious act against Odeon.[4]

Further, contrary to Odeon's conclusory allegation, Auriga did not engage in unfair competition by misappropriating and exploiting Odeon's "proprietary information." Odeon's Claim specifies neither the alleged information stolen by Auriga nor how this alleged information was exploited by Auriga. Odeon fails to allege facts because no such proprietary information was misappropriated and exploited.

## LEGAL DISCUSSION

Odeon's Claim alleges two causes of action against Auriga: (1) Tortious Interference of Contract and (2) Unfair Competition. Both claims are meritless.

**I.     Count Eight: Tortious Interference of Contract**

Under New York law, a claim for tortious interference with contract "requires the existence of a valid contract between the plaintiff and a third party, defendant's knowledge of that contract, defendant's intentional procurement of the third-party's breach of the contract without justification, actual breach of the contract, and damages resulting therefrom." *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424 (1996).

Here, Odeon's claim fails because it cannot show (1) the existence of a valid contract, (2) that Auriga intentionally procured Mr. Patel's alleged breach of the contract, or (3) that Mr. Patel in fact breached his contract with Odeon.

---

[1] Further, contrary to Odeon's conclusory allegations, Auriga did not tortiously interfere with Odeon's contractual relations with Mr. Patel by intentionally inducing Mr. Patel to solicit other Odeon employees to join Auriga. Auriga did hire another Odeon employee, John Denning, but such hiring was not directly or indirectly the result of any solicitation by Mr. Patel. Mr. Denning, who was an "at will" employee of Odeon, was free to leave the employ of Odeon at any time.

A.   **Odeon's Termination of the Contract Without Cause, and Its Breach of Its Contractual Obligations to Mr. Patel, Voided the Non-Compete and Non-Solicitation Provisions**

Odeon claims that Mr. Patel breached the restrictive covenants referenced in his agreement by becoming employed with Auriga.  Claim ¶ 5.  However, Section 6.2 of the agreement specifically renders the restrictive covenants in Sections 6.2.1 and 6.2.2 unenforceable in the event of a termination without cause: "During (i) the Contract Term and for two (2) months thereafter . . . you shall refrain [from accepting employment with a competitor within a seventy five mile radius of New York City] *unless . . . the Contract Term was ended Without Cause by Odeon . . .*" (emphasis added).

By the very terms of the agreement (drafted by Odeon), Odeon's instruction to Mr. Patel on August 20, 2015 to not come to work constituted a termination "without cause" under Section 2.7 of the agreement.  Section 2.7 states: "In the event that at any time during the Contract Term, Odeon elects not to require [Mr. Patel] to perform [his] duties hereunder and requires [him] not to attend work for any reason other than 'with cause' (as defined in Section 8.3)[5] such election shall constitute a 'Termination Without Cause."   Odeon's termination of Mr. Patel without cause freed Mr. Patel from the limitations of the restrictive covenants in Sections 6.2.1 and 6.2.2 of the contract.[6]

---

[5] For a termination to be "with cause," Section 8.3 of the agreement specifically required a notice, in writing, to Mr. Patel that specified the basis for Odeon's termination of the agreement.  No such notice was ever given.

[6] Even if Odeon had terminated Mr. Patel for cause, which it did not do, Mr. Patel did not start working at Auriga until after expiration of the two-month restriction period specified in Section 6.2.

In any case, New York law prevents an employer who terminates an employee without cause from invoking a restrictive covenant:

> Acknowledging the tension between the freedom of individuals to contract, and the reluctance to see one barter away his freedom, the State enforces limited restraints on an employee's employment mobility where a mutuality of obligation is freely bargained for by the parties. An essential aspect of that relationship, however, is the employer's continued willingness to employ the party covenanting not to compete. *Where the employer terminates the employment relationship without cause, however, his action necessarily destroys the mutuality of obligation on which the covenant rests . . . An employer should not be permitted to use offensively an anticompetition clause . . .* to economically cripple a former employee and simultaneously deny other potential employers his services.

*Post v. Merrill Lynch, Pierce Fenner & Smith*, 48 N.Y.2d 84, 89 (1979) (emphasis added); *see also Borne Chem. Co., Inc. v. Dictrow*, 445 N.Y.S.2d 406, 412 (N.Y. App. Div. 1981) ("In cases of involuntary discharge, if the employment agreement has been terminated by the employer without cause, the employer will not be permitted to invoke the covenant.").

Similarly, New York law is clear: a restrictive covenant in an employment agreement "is valid and enforcible, but not when the party benefited was responsible for the breach of the contract containing the covenant." *Cornell v. T.V. Dev. Corp.*, 17 N.Y.2d 69, 75 (1966); *see also Elite Promotional Mktg.*, 779 N.Y.S.2d 528, 530-31 (N.Y. App. Div. 2004) ("[W]hen a party benefitting from a restrictive covenant in a contract breaches that contract, the covenant is not valid and enforceable against the other party because the benefiting party was responsible for the breach.") (internal citations and quotations omitted).

Because Odeon terminated Mr. Patel's agreement without cause, and breached its obligations to Mr. Patel under the agreement by failing to pay

compensation due under the agreement and then prohibiting him from coming to work, the restrictive covenants referenced in Mr. Patel's agreement are void and unenforceable by Odeon under the terms of the agreement and New York law. Accordingly, Odeon cannot show "the existence of a valid contract" between it and Mr. Patel, and Auriga was free to hire Mr. Patel. *Lama Holding Co.*, 88 N.Y.2d at 424.

> **B.      Auriga Acted in Good Faith When It Hired Mr. Patel and Another Odeon Employee and Did Not Intentionally Procure Mr. Patel's Alleged Breach of the Contract**

To sustain a tortious interference claim, Odeon must show that Mr. Patel would not have breached his agreement "but for" Auriga's conduct. *Burrowes v. Combs*, 808 N.Y.S.2d 50, 53 (N.Y. App. Div. 2006) ("Specifically, a plaintiff must allege that the contract would not have been breached 'but for' the defendant's conduct."); *Washington Ave. Assocs., Inc. v. Euclid Equip., Inc.*, 645 N.Y.S.2d 511, 512 (N.Y. App. Div. 1996) ("Specifically, the plaintiff must allege that the contract would not have been breached 'but for' the defendant's conduct.").

Odeon has offered no facts supporting its conclusory claim that Auriga "intentionally induced Patel to breach the Agreement for its economic benefit." Claim ¶ 79. Under these circumstances, Odeon cannot reasonably argue that Mr. Patel would not have breached his agreement "but for" Auriga's conduct. *See Burrowes*, 808 N.Y.S.2d at 53 ("[A] plaintiff must support his claim with more than mere speculation."); *Washington Ave. Assocs.*, 645 N.Y.S.2d at 512 ("The plaintiff's contention that [defendant] breached the lease because of the appellant's actions, without a factual basis to support it, was insufficient to state a

cause of action against the appellant for tortious interference with contractual relations.").

In any event, Odeon cannot sustain a tortious interference claim against Auriga because Auriga in no way caused Mr. Patel's alleged breaches of his agreement. First, Auriga did not induce Mr. Patel to breach Section 6.2 of the agreement. Mr. Patel decided to leave Odeon because he was ordered not to come to work in the wake of a compensation dispute with Odeon, and Odeon management specifically told him that they wanted to part ways with Mr. Patel and he should seek alternative employment. Second, Auriga did not induce Mr. Patel to breach Section 6.4 of the agreement because Auriga never asked Mr. Patel to solicit other Odeon employees to join Auriga and Mr. Patel did not solicit other Odeon employees to join Auriga.

### C.    Mr. Patel Did Not Breach His Agreement with Odeon

As discussed above, pursuant to Section 2.7 of Mr. Patel's agreement, which Odeon drafted, Odeon terminated its agreement with Mr. Patel without cause, effective August 20, 2015. Under these circumstances, Section 2.7 makes clear that the limitations of the restrictive covenants in Sections 6.2.1 and 6.2.2 do not apply.

However, even if Odeon claims to have terminated the agreement with Mr. Patel for cause at this time, Mr. Patel did not start working at Auriga until November, after the two-month period specified in Section 6.2 had expired. Thus, at the time Mr. Patel began working at Auriga, he was not subject to any restrictive covenants and his employment with Auriga was not in breach of his agreement with Odeon. Accordingly, Odeon has failed to show an "actual breach

of the contract" and cannot sustain a tortious interference claim against Auriga. *Lama Holding Co.*, 88 N.Y.2d at 424.

## II.    Count Nine: Unfair Competition

Odeon alleges that "Respondents have in bad-faith misappropriated and exploited proprietary information belonging to claimant in an effort to compete unfairly against Claimant."[7]  But Odeon has failed to identify any proprietary information that Auriga could have misappropriated, how Auriga is allegedly using such misappropriated information, or how Auriga has acted in "bad-faith" in connection with its unidentified use of unidentified, but allegedly proprietary, information.

"Misappropriation" is based on the theory that "one may not misappropriate the results of the skill, expenditures and labors of a competitor." *ITC Ltd.*, 9 N.Y.3d at 477 (internal citations and quotations omitted). "Central to this notion is some element of bad faith." *Saratoga Vichy Spring Co., Inc. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir. 1980) (applying New York law). "[M]isappropriation usually concerns the taking and use of the plaintiff's property to compete against the plaintiffs own use of the same property." *ITC Ltd.*, 9 N.Y.3d at 478.  While "property" may include intellectual property, it does not encompass a "system of doing business," which is not a property right. *Germanow v. Standard Unbreakable Watch Crystals*, 283 N.Y. 1, 16 (1940).

---

[7] New York common law recognizes two theories of "unfair competition": (1) "palming off" and (2) "misappropriation." *ITC Ltd. v. Punchgini, Inc.*, 9 N.Y.3d 467, 476 (2007). "Palming off," which involves "the sale of the goods of one manufacturer as those of another," is clearly not relevant to this matter, as this case involves neither goods nor manufacturers, and Count Nine appears to rely solely on the misappropriation theory of unfair competition.

Odeon cannot sustain a claim for unfair competition without even alleging (1) what specific proprietary information Mr. Patel had access to; (2) how Auriga is purportedly using this information; and (3) some nefarious means of obtaining or using such information. Simply hiring a proprietary bond trader who may have been privy to confidential information of his former employer, but who did not misappropriate and misuse such confidential information, is not sufficient to state a claim for unfair competition. *Compare Ashland Mgmt. Inc. v. Janien*, 82 N.Y.2d 395, 407-08 (1993) (finding employee did not misappropriate former employer's trading strategy where employer's trading model was based on financial criteria that were public knowledge), *with Louis Capital Mkts., L.P. v. REFCO Grp. Ltd., LLC*, 801 N.Y.S.2d 490, 494-95 (N.Y. Sup. Ct. 2005) (finding broker-dealer stated a claim for misappropriation where former employee was sent into broker-dealer as a mole to learn its trading strategies and bring them back to employee's former employer).

## III.     Odeon's Liquidated Damages Claim Has No Basis

Odeon asserts that it is entitled to at least $5,653,415 pursuant to the liquidated damages clause contained in Section 6.5 of Mr. Patel's agreement (Claim ¶ 34) and requests that Auriga be held jointly and severally liable for this amount (Claim ¶ 38). However, the liquidated damages are unenforceable generally as a penalty, unenforceable against Auriga as a nonsignatory to the contract, and improperly calculated according to the terms of Section 6.5.

### A.     The Liquidated Damages Clause Is Invalid and Unenforceable

Parties to a contract may utilize liquidated damages provisions in those instances where it would otherwise be difficult to determine, at the time the

contract is formed, the amount of damages that will be suffered as a result of a breach.  Liquidated damages clauses are generally valid under New York law provided they meet certain criteria and do not amount to a penalty.  A liquidated damages clause will be upheld if (1) the amount fixed is a reasonable measure of the probable or actual loss in the event of breach, and (2) the actual loss suffered is difficult to determine precisely.  *See, e.g., JMD Holding Corp. v. Congress Fin. Corp.*, 4 N.Y.3d 373, 380 (2005); *Truck Rent-A-Car, Inc. v. Putnam Farms 2d, Inc.*, 41 N.Y.2d 420, 425 (1977).

The liquidated damages clause here is not valid, insofar as the actual loss suffered may be determined precisely.  The actual loss suffered is zero.  Any damages award above that amount would constitute an unconscionable penalty.

Odeon voluntarily and unilaterally decided to forego any and all revenues that might have been derived from Mr. Patel's trading activities when it refused to permit Mr. Patel to come to work any longer on August 20, 2015.  One month later, Odeon told Mr. Patel that it intended to part ways with Mr. Patel and encouraged him to seek and accept other employment.  At this point, Odeon had no intention or expectation of generating any future revenue as a result of Mr. Patel's further employment at the firm.  As such, Odeon suffered no "out-of-pocket" or "lost profits" damages under any rational legal theory as a result of Auriga's subsequent hiring of Mr. Patel.

### B.    Auriga Cannot Be Held Jointly and Severally Liable Pursuant to a Liquidated Damages Clause to Which It Was Not a Party

Even if the liquidated damages provision in the contract is valid and enforceable, Auriga is a third-party to this agreement and therefore cannot be

subjected to liquidated damages in this proceeding. *See Wirth & Hamid Fair Booking v. Wirth*, 265 N.Y. 214, 223 (1934) ("Liquidated damages constitute the compensation *which the parties* have agreed must be paid.") (emphasis added); *see also TBI Exploration, Inc. v. Belco Energy Corp.*, 1999 WL 393465, at *3 - 4 (N.D. Texas May 26, 1999) (defendant not liable to plaintiff pursuant to a liquidated damages clause because there was no privity of contract between the parties).

### C. Odeon's Calculation of Damages Pursuant to the Liquidated Damages Clause Is Incorrect and Contradicts Its Position that Mr. Patel Was Subject to the Section 6.2 Restrictive Covenants When He Started at Auriga

Even if the liquidated damages provision is valid and enforceable, and were somehow enforceable against third-party Auriga, Odeon's calculation pursuant to Section 6.5 is faulty and incorrect. Odeon claims that "On or about November 5, 2015, Patel suddenly resigned from his employment at Odeon without any prior notice." Claim ¶ 21. However, in calculating its liquidated damages under Section 6.5, Odeon uses the six-month period from March 20, 2015 to August 20, 2015 (the day Odeon benched Mr. Patel). Section 6.5 clearly states that the average monthly compensation is to be calculated over "the six (6) month period *immediately preceding the termination of your engagement with Odeon.*" (emphasis added). Odeon cannot simultaneously claim that Mr. Patel "suddenly resigned" on November 5, 2015, and then self-servingly use August 20, 2015 as the end-date for the six-month period referenced in Section 6.5.

Odeon cannot have it both ways—either (1) the agreement with Mr. Patel was terminated when the firm told Mr. Patel to stay home on August 20, 2015

pursuant to Section 2.7, and Odeon gets to use this last day of trading in calculating damages under Section 6.5, or (2) the agreement with Mr. Patel was terminated on November 5, 2015 as alleged, and the firm must factor Mr. Patel's two-and-a-half months of zero revenue in calculating damages under Section 6.5.[8] There is absolutely no basis in Section 6.5 for using "the last six (6) months of being assigned a sector" (Claim ¶ 35 n. 1) to calculate Odeon's liquidated damages.

### IV.    Odeon's Arbitration Claim Is a Nullity and Must Be Dismissed

Odeon's arbitration filing with FINRA Dispute Resolution was deficient because Odeon's Uniform Submission Agreement was not signed and acknowledged by one of its principals, but instead was improperly signed and acknowledged by Odeon's outside counsel. *See FINRA Dispute Resolution Party's Reference Guide* at 20 (Sept. 12, 2014) ("An attorney may not sign a Submission Agreement on your behalf unless FINRA is provided with a power of attorney giving the attorney authority to sign. *Similarly, outside counsel for member firms may not sign the Submission Agreement*") (emphasis added); *Hines v. Principal Fin. Sec., Inc.*, 1996 WL 522880 (N.A.S.D. June 13, 1996) (arbitrators ruled that "Respondent Principal did not file with the NASD a properly executed submission to arbitration" where the submission agreement was signed by its "outside counsel").

FINRA Dispute Resolution, which serves as the gatekeeper against facially deficient filings, should never have served Auriga with Odeon's papers.

---

[8] In this case, the six-month period would be from June 5, 2015 – November 5, 2015.

*See* FINRA Rule 13307(a) ("The Director will not serve any claim that is deficient. The reasons a claim may be deficient include the following: . . . The Submission Agreement was not properly signed and dated").

Odeon's filing, therefore, is void *ab initio* (void from the beginning). It does not meet the legal requirements for properly commencing a FINRA arbitration. By filing this Answer, Auriga does not intend to waive its right to argue that this proceeding is null and void, and requests that this proceeding be dismissed on the ground that no valid Uniform Submission Agreement was filed.[9]

### AFFIRMATIVE DEFENSES

(1)   This proceeding must be dismissed because Odeon failed to sign and acknowledge the Uniform Submission Agreement it tendered to FINRA Dispute Resolution along with its Claim.

(2)   The Claim, in whole or in part, fails to state a claim upon which relief can be granted.

(3)   Any alleged damages incurred by Odeon were caused, in whole or in part, by its own conduct.

(4)   The liquidated damages provision of the agreement between Odeon and Mr. Patel is not valid and enforceable.

(5)   Odeon is not entitled to liquidated damages against Auriga because Auriga was not party to the liquidated damages agreement between Odeon and Mr. Patel.

---

[9] Auriga filed this Answer to avoid any possibility that an arbitration panel (or FINRA Dispute Resolution) would deem Auriga to be in default for failure to file an Answer.

(6)   To the extent Odeon has suffered any damages, which Auriga denies, it has failed to mitigate its alleged damages.

(7)   Odeon is not entitled to punitive damages against Auriga as a matter of law.

(8)   Odeon is not entitled to an award of attorneys' fees or accounting fees against Auriga as a matter of law.

(9)   Odeon would be unjustly enriched if granted relief against Auriga.

(10)  Odeon's claims are barred by the doctrines of estoppel, waiver and ratification.

## CONCLUSION

For the foregoing reasons, Auriga respectfully requests that the Panel dismiss this action, or in the alternative, deny all of Odeon's claims against it, and award Auriga such relief as it deems just and proper, including reasonable attorneys' fees and costs as a sanction against Odeon for filing a frivolous Claim against Auriga.

Dated:       Stamford, Connecticut
             March 25, 2016

                          FINN DIXON & HERLING LLP

                          By: _____
                              Jeffrey Plotkin
                              Lauren Schreur

                          177 Broad Street
                          Stamford, Connecticut 06901
                          (Tel.) (203) 325-5018
                          (Tel.) (203) 325-5055
                          (Fax) (203) 325-5001
                          Attorneys for Respondent
                          Auriga USA LLC

## CERTIFICATE OF SERVICE

A copy of the foregoing Answer and Auriga's signed Submission

Agreement was served via Federal Express and electronic mail on March 25,

2016 upon:

Jonathan Sack, Esq.
Eric R. Stern, Esq.
Sack & Sack, LLP
110 East 59th Street, 19th Floor
New York, NY 10022
jsack1@gmail.com
estern@sackandsack.com

Attorneys for Claimant
Odeon Capital Group LLC

Gary Trachten
Kudman Trachten Aloe LLP
350 Fifth Avenue, 68th Floor
New York, NY 10118
gtrachten@kudmanlaw.com

Attorneys for Respondent
Mihir Patel

Jeffrey Plotkin
FINN DIXON & HERLING LLP
177 Broad Street
Stamford, Connecticut 06901
(Tel.) (203) 325-5018
(Tel.) (203) 325-5055
(Fax) (203) 325-5001
Attorneys for Respondent
Auriga USA LLC

# EXHIBIT C

**FINRA DISPUTE RESOLUTION**

```
------------------------------------------------ )
ODEON CAPITAL GROUP LLC,                          )
                                                  )
                    Claimant,                     )
                                                  )
          -against-                               )          Case No.: 16-00033
                                                  )
MIHIR J. PATEL and AURIGA USA, LLC,               )
                                                  )
                    Respondents.                  )
------------------------------------------------ )
MIHIR PATEL,                                      )
                                                  )
                         Counterclaimant,         )
                         and Third-Party          )
                         Claimant,                )
                                                  )
          -against-                               )
                                                  )
ODEON CAPITAL GROUP LLC                           )
                                                  )
                         Counterclaim             )
                         Respondent,              )
                                                  )
                    and                           )
                                                  )
MATHEW VAN ALSTYNE and EVAN                       )
SCHWARTZBERG,                                     )
                                                  )
                         Third-Party Claim        )
                         Respondents.             )
------------------------------------------------ )
```

## RESPONDENT AURIGA USA, LCC'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INFORMATION

Pursuant to Rule 13506 of the FINRA Code of Arbitration Procedure, Respondent Auriga USA, LLC ("Auriga"), by its attorneys Finn Dixon & Herling LLP, request that Claimant Odeon Capital Group LLC ("Odeon") produce to Respondent the following documents and information within 60 days of receipt of this request.

## INSTRUCTIONS AND DEFINITIONS

1.    These instructions and definitions are not intended to broaden or narrow the scope of discovery permitted by FINRA's Code of Arbitration Procedure.

2.    The term "person" includes any natural person, firm, partnership, association, proprietorship, joint venture, corporation, underwriter, governmental agency, or other organization or legal business entity.

3.    "Odeon" or the "Firm" means Odeon Capital Group LLC, any of its subsidiaries (and any predecessors thereof), and any of its present or former directors, officers, employees, affiliates, representatives, advisors, agents, attorneys, associates or any other person acting on its behalf.

4.    "You" and "Your" means the responding party and the assigns, agents and persons acting on behalf of the responding party.

5.    The term "Claim" means the Firm's Statement of Claim, filed on December 30, 2015.

6.    The term "matter" refers to this arbitration, and all other events in connection with the proceeding referred to as Case No.: 16-00033.

7.    The term "Agreement" means the agreement between Mihir Patel and Odeon, dated March 2, 2015, appended to the Claim as Exhibit A.

8.    "Trading" or "Trade" or "investment" means any transaction, of any type, involving securities.

9.    The terms "document" and "documents" shall be deemed to mean any document, thing, or physical or electronic embodiment of information, data, or ideas (including the original, copy, non-conforming copies, or drafts); and shall

include, but are not limited to, all communications, including electronic communications; paper materials of any kind, whether written, typed, printed, punched, filmed or marked in any way; records or data stored, maintained, or accessed by computers; recording tapes or wires; film; photographs; movies or any graphic matter however produced or reproduced; and all mechanical or electronic sound recordings or transcripts thereof.

10.     The terms "concerning" or "concern" shall mean relate to, refer to, respect, summarize, digest, embody, reflect, establish, tend to establish, tend not to establish, evidence, comprise, connect with, comment on, respond to, disagree with, show, describe, analyze, represent, constitute, or include.

11.     Each request for the production of documents shall be deemed continuing in nature.  Prompt production of additional documents is required if further, additional, or different information or documents are obtained prior to the trial or hearing in this matter.

12.     Each request for production shall be construed independently and not with reference to any other request for production for the purpose of limitation.

13.     Documents attached to each other should not be separated.

14.     In producing documents and other materials, you are requested to furnish all documents or things in your possession, custody or control, regardless of whether such documents or materials are possessed directly by you or your agents, employees, representatives, managing agents, affiliates, accountants, investigators, or by your attorneys or their agents, employees, representatives or

investigators. Without limitation of the term "control" as used in the preceding sentences, a document is deemed to be in the Firm's control if the Firm can rightfully secure the document or a copy thereof from another person having actual physical possession of the document.

15.     If any document requested was, but is no longer, in possession or subject to the Firm's control as defined herein, state:

> A. What disposition was made of it, and the date or dates, or approximate date or dates, on which such disposition was made,
>
> B. The last known location of that document, and
>
> C. The names and addresses of all persons with knowledge of the contents of that document.

16.     Any document withheld from production based on a claim of privilege or any similar claim shall be identified. If a privilege is asserted to the production of a documents, the following information shall be furnished, in lieu of production with respect to each such document:

> A. The author,
>
> B. The addressee or recipient,
>
> C. The date of the document,
>
> D. The names of any persons who received the original or a copy of the document and identification of their employer and job title,
>
> E. A brief description of the nature and subject matter of the document and any attachment(s); and
>
> F. A statement of the basis upon which the privilege is claimed.

17.     The following rules of construction apply:

A. Any/All. "All" includes the word "any," and "any" includes the word "all."

B. Verb tense. The use of a verb in any tense shall be construed as the use of the verb in all other tenses whenever necessary to bring within the scope of the document request all documents that might otherwise be construed to be outside its scope.

C. Terms in the plural include the singular, and terms in the singular include the plural.

D. "Each" includes the word "every," and "every" includes the word "each."

E. "And" as well as "or" shall be construed disjunctively or conjunctively as necessary in order to bring within the scope of any request any information which might otherwise be construed to be outside its scope.

## REQUESTED DOCUMENTS AND INFORMATION

1.    All documents evidencing the "respective contractual obligations to Odeon" of Mihir J. Patel ("Mr. Patel") and the "other Former Odeon employees" referenced in paragraph 30 of the Claim.

2.    All documents evidencing Odeon's contention that Auriga "knowingly participated in causing both Patel and other former Odeon employees to break their respective contractual obligations to Odeon" as referenced in paragraph 30 of the Claim.

3.    All documents evidencing Odeon's contention that Auriga "intentionally induced Patel to breach the Agreement for its economic benefit" as referenced in paragraph 75 of the Claim.

4.    All documents evidencing Odeon's contention that Auriga's actions were "wanton and willful" as referenced in paragraph 82 of the Claim.

5.    Identify all individuals, including their employer, title, last known address, telephone number, and email address, with knowledge or information concerning Auriga's alleged inducement of Patel and other former Odeon employees to breach their contractual obligations to Odeon.

6.    Identify the proprietary information belonging to Odeon referenced in paragraph 84 of the Claim that Respondents have allegedly misappropriated.

7.    All documents evidencing Odeon's contention that Respondents have misappropriated or exploited proprietary information belonging to Odeon as referenced in paragraph 84 of the Claim.

8.    Identify the "clients and potential clients" referenced in paragraph 85 of the Claim, including contact person, last known address, telephone number, and email address.

9.    Identify the property that Odeon alleges Mr. Patel has "wrongfully and unlawfully retained possession, custody, and control over" as referenced in paragraph 37 of the Claim.

10.   All documents evidencing Odeon's right to the property identified in response to the above Request.

11.   All documents concerning Mr. Patel's employment with Auriga.

12.   All communications between Odeon and the following individuals concerning their employment or potential employment at Auriga:

(a) Mr. Patel

(b) Seth Dorman

(c) Michael Kelley

         (d) Colin Abt

         (e) Jonathon Denning

13.    All documents evidencing Odeon's contention in paragraph 28 of the Claim that Mr. Patel "directly and indirectly was responsible for soliciting away Odeon employees to work for Auriga."

14.    Identify all persons, including their employer, title, last known address, telephone number, and email address, with knowledge or information that Mr. Patel "directly and indirectly was responsible for soliciting away Odeon employees to work for Auriga" as referenced in paragraph 28 of the Claim.

15.    Identify the date upon which Odeon elected not to require Mr. Patel to perform his duties under his Agreement and ordered him not to attend work until further notice.

16.    All documents concerning Odeon's election not to require Mr. Patel to perform his duties under his Agreement and order to Mr. Patel not to attend work until further notice.

17.    Identify all individuals associated with Odeon who participated in discussions and decisions regarding Odeon's election not to require Mr. Patel to perform his duties under his Agreement and order to Mr. Patel not to attend work until further notice.

18.    All documents related to Patel's cessation of trading for Odeon on August 20, 2015, as referenced in paragraph 34, note 1 of the Claim.

19.    Identify the date Odeon disabled Mr. Patel's access to his Odeon email account.

20.     Identify the date Odeon disabled Mr. Patel's access to his Bloomberg accounts at Odeon.

21.     Identify the date Odeon took away Mr. Patel's building pass to Odeon's place of business.

22.     All documents concerning Odeon's disabling of Mr. Patel's access to his Odeon email account.

23.     All documents concerning Odeon's disabling of Mr. Patel's access to his Bloomberg accounts at Odeon.

24.     All documents concerning Odeon's taking away of Mr. Patel's building pass to Odeon's place of business.

25.     Identify all persons associated with Odeon who participated in the decision to disable Mr. Patel's access to his Odeon email account, his Bloomberg account, and/or to take away Mr. Patel's building pass to Odeon's place of business.

26.     Identify all individuals, including their employer, title, last known address, telephone number, and email address, who participated in a meeting between Mr. Patel and Odeon representatives at Odeon's office on or about September 23, 2015.

27.     All documents concerning the meeting between Mr. Patel and Odeon representatives at Odeon's office on or about September 23, 2015.

28.     Odeon's personnel files (excluding materials protected by privacy regulations), including but not limited to any employment agreements, concerning the following individuals:

(a) Mihir Patel

(b) Seth Dorman

(c) Michael Kelley

(d) Colin Abt

(e) Jonathon Denning

29.　　All documents supporting Odeon's calculation of liquidated damages pursuant to Section 6.5 of the Agreement as referenced in paragraph 34 of the Claim.

30.　　Documents sufficient to show the monthly compensation earned by Odeon attributable to Mr. Patel's trading efforts on behalf of the Firm for January 1, 2015 through November 5, 2015.

31.　　All documents concerning Odeon's payment to Mr. Patel of the "agreed-upon contractual consideration in exchange for Patel's adherence to the post-employment restrictions" referenced in paragraph 4 of the Claim.

32.　　All documents concerning the performance-based bonus provided for in the Agreement referenced in paragraph 10 of the Claim, including but not limited to all calculations and analyses concerning the bonus for any time period in 2015 and all materials supporting such calculations and analyses.

33.　　All documents concerning the application of the restrictive covenants in Section 6.2 of the Agreement to Mr. Patel, including, but not limited to, any communications internally at Odeon or with Mr. Patel concerning the application of the restrictive covenants.

34.   All documents evidencing Odeon's claim that Auriga is a "competitor" of Odeon as defined in Section 6.2 of the Agreement.

35.   All documents concerning Odeon's drafting or filing of Mr. Patel's Form U5, Uniform Termination Notice for Securities Industry Registration.

36.   Identify the Odeon principals, if any, who reviewed the Claim before it was filed with FINRA on December 30, 2015, and the date such persons reviewed the Claim.

Dated:   Stamford, Connecticut
         July 1, 2016


                              FINN DIXON & HERLING LLP

                              By: _____
                                  Jeffrey Plotkin
                                  Lauren Schreur

                              177 Broad Street
                              Stamford, Connecticut 06901
                              (Tel.) (203) 325-5018
                              (Tel.) (203) 325-5055
                              (Fax) (203) 325-5001
                              Attorneys for Respondent
                              AURIGA USA LLC


cc:   Gary Trachten
      350 Fifth Avenue, 68th Floor
      New York, New York 10118
      Telephone: (212) 868-1010

# EXHIBIT D



**FINN DIXON & HERLING**   Attorneys at Law

Jeffrey Plotkin
(203) 325-5018
jplotkin@fdh.com

September 2, 2016

**By Email**

Jonathan Sack, Esq.
Sack & Sack
70 East 55th Street, 10th Floor
New York, NY 10022

Re:   _Odeon Capital Group LLC v. Patel_, FINRA Arb. No. 16-00033

Dear Mr. Sack:

This law firm represents respondent Auriga USA, LLC in the above captioned arbitration. On July 1, 2016, we served you, as counsel for claimant Odeon Capital Group LLC, with Auriga's First Request for Production of Documents and Information (the "Request"). Pursuant to Rule 13507(a) of the FINRA Code of Arbitration Procedure, Odeon's response was due within 60 days of receipt of the Request, _i.e._, August 30, 2016. To date, we have received no response to the Request, or any communication from you or Odeon regarding the Request.

As you know, Rule 13507(b) admonishes that "[a] party must act in good faith when complying with paragraph (a) of this rule." Based on the above, Odeon does not appear to be acting in good faith in connection with the Request.

If Odeon does not provide an appropriate response to the Request by 5:00 pm on Tuesday September 6, 2016, Auriga will have no choice but to move the Panel to compel discovery from Odeon pursuant to Rule 13509 and to impose sanctions against Odeon pursuant to Rule 13212.

Yours truly,

Jeffrey Plotkin

cc: Gary Trachten, Esq.